## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **HOWARD C. LAPENSOHN,** et al., <br><br> Plaintiffs, <br><br> *v.* <br><br> **HUDSON CITY SAVINGS BANK,** et al., <br><br> Defendants. | **CIVIL ACTION** <br><br> **NO. 19-4576-KSM** |

### MEMORANDUM

**MARSTON, J.**                                                                      **April 21, 2021**

This case is one of many similar cases brought by Plaintiffs' counsel, Attorney Joshua Thomas.  In each case, a mortgagor bank foreclosed on the plaintiff's home after many months, and in some cases, years, of nonpayment.[1]  When the plaintiff's challenges to foreclosure failed in state court, Mr. Thomas filed a federal case on the relevant homeowner's behalf, asking the district court to reconsider the issues already decided in the state action.  As Mr. Thomas should well know from those previous cases, and as will be restated here, federal court is not a forum to relitigate issues decided by a state court.

Mr. Thomas filed this case on behalf of Plaintiffs Howard C. Lapensohn and Jill Abrams Lapensohn against Defendant M&T Bank, as successor-by-merger to Hudson City Savings Bank, and Defendant M&T Bank Corp.[2]  (Doc. Nos. 1, 23.)  They assert claims for breach of

---

[1] *See, e.g.*, *Scripnicencu v. LSF9 Mater Participation Trust*, Civil Action No. 19-5280, 2020 WL 4805349 (E.D. Pa. Aug. 18, 2020); *Meyers v. Caliber Home Loans, Serterus, Inc.*, No. 1:19-cv-596, 2019 WL 4393377 (M.D. Pa. Sept. 13, 2019); *Campbell v. Tabas*, Civil Action No. 16-6513, 2017 WL 3142118 (E.D. Pa. July 25, 2017); *Bucci v. Bayview Loan Servicing*, No. 2:19-cv-02482-GEKP, Doc. No. 18 (E.D. Pa. Jan. 23, 2020).

[2] The Lapensohns have named M&T Bank Corp. twice as a defendant, once as M&T Bank Corp. and once as M&T Bank Corporation.  (*See* Doc. No. 23.)

contract, unjust enrichment, violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), violations of the regulations under the Real Estate Settlement Procedures Act ("RESPA"), and common law negligence.  (Doc. No. 23 at pp. 19–25.) Defendants have moved to dismiss all claims brought against them.  (*See* Doc. Nos. 24–25.)  For the reasons that follow, we grant Defendants' motions and dismiss the complaint.

## I.    Factual Background

The statement of facts in the amended complaint is not in chronological order and is riddled with inconsistencies and gaps of information.  However, taking the allegations in the amended complaint as true, and where necessary, relying on documents from the underlying foreclosure action,[3] the relevant facts are as follows.

### A.    The Home at 1106 Robin Road

On January 1, 2009, the Lapensohns began living in a newly constructed home at 1106 Robin Road in Gladwyne, Pennsylvania.  (Doc. No. 23 at p. 3 ¶ 1.[4])  In the spring of 2009, only a few months after the Lapensohns moved into the home, they "became aware of construction defects."  (*Id.* at p. 4 ¶ 9.)  By February 2012, they had learned that the property was "structurally deficient" and subject "to ongoing significant resultant damage."  (*Id.* at p. 4 ¶ 9.)  And by July 2014, a preliminary construction defect report estimated the preliminary cost of repairs on the home would total more than $1.4 million.  (*Id.* at p. 6 ¶¶ 30–31.)

---

[3] "In evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint, and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, and items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (cleaned up).

[4] The paragraphs in the amended complaint are not sequential and the numbering restarts under each section.  Therefore, in citing portions of the complaint we reference both the page number assigned by ECF and the relevant paragraph number on that page.

When the Lapensohns moved into the home on Robin Road, it appraised for $2.45 million and was subject to construction financing from Independent Mortgage Company.  (*Id.* at p. 3 ¶ 3.)  Not long after moving in, they applied for permanent financing with Hudson City Savings Bank, but one week before the closing on the permanent mortgage, Hudson City, "without explanation," reduced the initial appraisal from $2.45 million to $2.25 million.  (*Id.* at p. 3 ¶ 4.)  This change left the Lapensohns with insufficient funds to pay the construction lender in full or to pay the balance owed the builder.  (*Id.* p. 3 ¶ 7.)

In March 2009, Hudson City and the Lapensohns executed a note and mortgage which reflected a loan in principal of $1,237,500.  (*Id.* at p. 4 ¶ 15; *Hudson City Sav. Bank v. Lapensohn*, Case No. 2014-27824, Complaint at ¶ 5 (Montgomery Cty. Ct. Comm. Pl.) [hereinafter Foreclosure Complaint].)  The note provided for monthly interest payments from its inception to April 30, 2014, after which the loan would amortize based on a 30-year schedule, and the Lapensohns would begin paying a combination of interest and principal.  (Doc. No. 23 at p. 4 ¶ 15.)

Hudson City and the Lapensohns entered into two loan modifications, one in 2010 and one in 2011.  (*Id.* at p. 4 ¶ 11; Foreclosure Complaint at ¶¶ 7–8, Ex. C, Ex. D.)  Both modifications called for an interest rate reduction, and the second modification changed the amortization terms so that the previous April 30, 2014 start date moved to September 1, 2015.  (Doc. No. 23 at p. 4 ¶¶ 13, 16; *but see* Foreclosure Complaint at Ex. D ("The new monthly payment for interest will be $4,382.81 effective: 12/01/2011 until 9/01/2018 at which amortization will commence.").)  Despite this second modification, in April or May of 2014,

Hudson City began invoicing principal as well as interest, and the Lapensohns' mortgage payments increased from $4,300 to $7,000 per month.  (Doc. No. 23 at p. 4 ¶¶ 17–19.)

In the spring of 2014, the Lapensohns were also "heavily into construction defect and insurance coverage litigation over the property and were contractually out of pocket in excess of $10,000 per month in legal and expert witness fees as well as costs of emergency repairs that the builder refused to perform."  (*Id.* at p. 5 ¶ 27.)  Because they could not afford to pay both those fees and the increased mortgage payments, the Lapensohns "fell behind" on the mortgage beginning June 1, 2014.  (*Id.* at p. 5 ¶ 28; *see also* Foreclosure Complaint at Ex. F (Notice of Mortgage Default).)  They claim that they "attempt[ed] multiple time[s] to enter into discussions with the Defendants regarding the global situation."  (Doc. No. 23 at p. 5 ¶ 28.)

After the Lapensohns entered default, Hudson City brought a collection action against them, and in response, the Lapensohns requested a forbearance agreement that would put them back to interest-only payments for 12 months and a meeting with a senior bank officer to review and discuss their situation.  (*Id.* at p. 5 ¶ 29.)  Hudson City denied both requests, explaining that they had no way of entering into a forbearance agreement and there was no point in meeting with a bank official because there was nothing to discuss.  (*Id.* at p. 6 ¶ 32.)  Hudson City did, however, encourage the Lapensohns to apply for one of their formal loan modification programs. (*Id.* at p. 6 ¶ 34.)  The Lapensohns suggest that this encouragement was done in bad faith because Hudson City knew that they "did not qualify for the [modification programs] because the property value had dropped so low in relation to the mortgage."  (*Id.* at p. 6 ¶¶ 34–35.)  They assert that Hudson City was "doing nothing but wasting time" and often made them resubmit the same paperwork multiple times.  (*Id.* at p. 7 ¶ 38–39, 41, 43.)  Despite not qualifying for the loan modification programs, the Lapensohns "dealt with" applications for those programs from May

2014 through September 2017 and submitted, often multiple times, all the documents that the bank requested. (*Id.* at p. 7 ¶¶ 40–41, 43.)

### B.      The Foreclosure Action and Sheriff's Sale

On October 14, 2014, Hudson City filed a foreclosure action in the Montgomery County Court of Common Pleas, which sought an "in rem judgment against [the Lapensohns] for foreclosure and sale" of the Robin Road home for the balance of principal, unpaid interest, and fees — $1,267,379.64. (Foreclosure Complaint at p. 8; Doc. No. 23 at p. 7 ¶ 44.) While that litigation was pending, Hudson City sent engineers and appraisers to inspect the home. The Lapensohns allege that the bank's "unlicensed purported engineer" incorrectly found that less than $100,000 in repairs were needed on the home, and the bank's appraiser issued an appraisal that was "highly overrated." (Doc. No. 23 at p. 8 ¶¶ 50–51 (failing to list the appraisal amount).)

Hudson City moved for summary judgment on the grounds that the Lapensohns' answer and new matter admitted the existence and amount of the mortgage, that they were in default for failing to make timely mortgage payments as of June 1, 2014, and that Hudson City provided the necessary pre-foreclosure notices. (*See Hudson City Sav. Bank v. Lapensohn*, Case No. 2014-27824, Doc. No. 10 at p. 7 [hereinafter Motion for Summ. Jmt.].) On April 2, 2015, the state court granted Hudson City's motion as unopposed; entered judgment in rem in favor of Hudson City in the amount of $1,270,518.20 with interest, advances, attorney's fees, and costs; and dismissed with prejudice the Lapensohns' affirmative defenses. (Doc. No. 23 at p. 7 ¶ 46; *see also Hudson City Sav. Bank v. Lapensohn*, Case No. 2014-27824, Doc. No. 11 [hereinafter Summ. Jmt. Order].) The prothonotary then issued a writ of execution, directing the sheriff of Montgomery County, Pennsylvania, to levy upon and sell the Robin Road home to satisfy the

foreclosure judgment.  (*See Hudson City Sav. Bank v. Lapensohn*, Case No. 2014-27824, Doc. No. 13 [hereinafter Writ of Execution].)

In December 2015, Hudson City Savings Bank merged into M&T Bank, with M&T Bank remaining as the surviving entity.  (Doc. No. 23 at p. 2 ¶ 7; *see also* Doc. No. 25-5 at § 1.8 (Agreement and Plan of Merger)[5].)  M&T Bank is a wholly owned subsidiary of M&T Bank Corporation.  (Doc. No. 23 at p. 2 ¶ 7; *see also* Doc. No. 25-5 at § 1.8.)  Having prevailed in the foreclosure action, M&T Bank scheduled a sheriff's sale of the Robin Road home.  In January 2016, M&T Bank and the Lapensohns each sent another appraiser to the home, both of whom valued the house at "salvage and the land."  (Doc. No. 23 at p. 10 ¶ 68.)  Although the two appraisals "differed by $50,000, . . . in both cases[,] they were $1.75M less than the appraised value in March 2009 — $2,450,000 — when the loan was given."  (*Id.* at p. 10 ¶ 69.)

After continuing the sheriff's sale multiple times, M&T Bank informed the Lapensohns that it planned to sell the home on March 8, 2016.  (*Id.* at p. 10 ¶ 70.)  However, on the morning of the sale, "Mr. Lapensohn filed a bankruptcy [action] . . . to cancel the sale."  (*Id.* at p. 10 ¶ 71.)  The bankruptcy proceeding was dismissed a few months later, on September 11, 2016 (*id.*), and the sheriff's sale was relisted for October 31, 2017 (*id.* at p. 11 ¶ 80).  In the meantime, M&T Bank lowered the Lapensohns' monthly mortgage payment back to around $4,300, again "without explanation."  (*Id.* at p. 5 ¶ 22.)

---

[5] We may take judicial notice of the merger, which is reflected in public documents filed with the Securities and Exchange Commission ("SEC").  *See Oran v. Stafford*, 226 F.3d 275, 289 (3d Cir. 2000) (taking judicial notice of SEC filings in connection with a motion for judgment on the pleadings); *In re Adolor Corp. Sec. Litig.*, 616 F. Supp. 2d 551, 572 n.20 (E.D. Pa. 2009) ("We are permitted to take judicial notice of SEC filings in evaluating the allegations in the Amended Complaint."); *see also Lapensohn v. Hudson City Sav. Bank*, Civil No. 2:20-cv-00680-JMG, 2020 WL 4704948, at *8 n.2 (E.D. Pa. Aug. 13, 2020) ("The Court takes judicial notice of the fact that M&T Bank merged with Defendant Hudson City Savings Bank on November 1, 2015, making M&T Bank the successor by merger to Hudson City.").

An hour before the October sheriff's sale, the state court granted the Lapensohns' *pro se* petition to postpone the sheriff's sale and postponed the sale to January 31, 2018. (*Id.* at p. 11 ¶¶ 81–82; *see also Hudson City Sav. Bank v. Lapensohn*, Case No. 2014-27824, Doc. No. 95.) The Lapensohns also filed a petition to open summary judgment and stay the sheriff's sale, arguing that the "case should be reopened because the real party in interest as the Plaintiff [M&T Bank Corp.] is not currently entered properly, discovery was never procured in this matter since Defendant had no opportunity to take discovery, nor were they informed the opportunity existed, and there was no opposition to the summary judgment submitted." (*Hudson City Sav. Bank v. Lapensohn*, Case No. 2014-27824, Doc. No. 98; *see also* Doc. No. 23 at p. 12 ¶ 85.) While the Lapensohns' petition to open summary judgment and stay the sale was pending, the sheriff's sale proceeded on January 31, 2018. Therefore, in March of 2018, the state court denied the petition as moot because the sale had already occurred. (*Hudson City Sav. Bank v. Lapensohn*, Case No. 2014-27824, Doc. No. 106 [hereinafter Order Denying Petition to Reopen]; *see also* Doc. No. 23 at p. 12 ¶ 86.)

Undeterred, the Lapensohns also filed a motion to set aside the sheriff's sale, in which they argued that the sale should be set aside and the case reopened because "they have NEVER been given" an opportunity to defend the matter and because M&T Bank "act[ed] in Bad Faith" by refusing to meet with the Lapensohns or work toward an amicable resolution. (*Hudson City Sav. Bank v. Lapensohn*, Case No. 2014-27824, Doc. No. 102 [hereinafter Motion to Set Aside]; Doc. No. 23 at p. 12 ¶ 85.) The state court denied the motion to set aside without discussion. (*Hudson City Sav. Bank v. Lapensohn*, Case No. 2014-27824, Doc. No. 114 [hereinafter Order Denying Set Aside].)

In May 2018, the Lapensohns appealed the lower court's orders denying the motion to open summary judgment and the motion to set aside the sheriff's sale. (*Hudson City Sav. Bank v. Lapensohn*, Case No. 2014-27824, Doc. No. 115.) Before the Pennsylvania Superior Court, the Lapensohns argued that the trial court "improperly denied the Petition to Open as Moot," "improperly denied the motion to set aside the sheriff sale without a hearing," "improperly denied a stay of the sheriff sale," and "committed an error of law in finding for the Plaintiff." (*Hudson City Sav. Bank v. Lapensohn*, Case No. 2014-27824, Doc. No. 121.) In June 2018, the appellate court issued a one-sentence, per curiam opinion granting Hudson City's motion to quash and dismiss the appeal. (*Hudson City Sav. Bank v. Lapensohn*, Case No. 2014-27824, Doc. No. 126 [hereinafter Order Dismissing Appeal].)

### C.    Other Allegations

In addition to this narrative, the Lapensohns also make multiple one-off allegations. Among other things, they note that on January 16, 2018, just before the sheriff's sale, the property's home insurance policy was "permitted to expire," and as a result, M&T Bank put a force-placed insurance policy on the property. (Doc. No. 23 at p. 12 ¶ 92–93.) Then the Lapensohns allege that on February 8, 2016, M&T Bank's real estate broker came by the house and said that he had been told the house was in perfect condition. (*Id.* at p. 13 ¶¶ 97–102.)And the Lapensohns claim that they made "substantial overpayments" on their mortgage. (*Id.* at p. 14 ¶ 110.)

## II.    Procedural History

### A.    The Initial Complaint

The Lapensohns filed their initial complaint in this Court on October 3, 2019 against M&T Bank, as successor-by-merger to Hudson City Savings Bank, and M&T Bank Corp. (Doc.

No. 1.)  Defendants filed motions to dismiss.  (Doc. Nos. 7 & 8.)  First, M&T Bank argued that the Lapensohns' claims are precluded by the state court foreclosure action, barred by the applicable statutes of limitation, and otherwise fail to state claims for relief.  (Doc. No. 7.) Second, M&T Bank Corp. argued that the complaint should be dismissed because the allegations are properly directed to M&T Bank — as successor by merger to Hudson City Savings Bank — and not its parent company, M&T Bank Corporation.  (Doc. No. 8.)  In response, the Lapensohns filed a two-page memorandum, in which they misconstrued M&T Bank Corp.'s argument as taking issue with the complaint's use of the abbreviation, "corp.," instead of using the full "corporation."  (Doc. No. 10 at pp. 1–2.)  Without addressing any of Defendants' other arguments, the Lapensohns requested permission to file an amended complaint that added M&T Bank Corporation and Unknown Corporations 1–50 as Defendants, but otherwise left the majority of the allegations and counts untouched.  (*See generally* Doc. No. 10.)

On February 24, 2020, while those motions were pending, this case was reassigned from the Honorable Cynthia M. Rufe to the Honorable Karen Spencer Marston, and the Court held a preliminary pretrial conference with the parties on March 11, 2020.  (Doc. No. 14.)  During the pretrial conference, defense counsel noted that the Lapensohns failed to substantively respond to the motions to dismiss, and as a result, had waived argument on those issues.  M&T Bank Corp. also explained, yet again, why it is not a proper party in this litigation.  In response, Plaintiffs' counsel, Mr. Thomas, suggested that he had accidentally submitted the wrong version of the Lapensohns' opposition to the motion to dismiss.

The Court agreed to allow the Lapensohns to file a revised amended complaint, after which, Defendants could renew their motions to dismiss if necessary.  The Court also stayed this case until further notice.

### B.      *The Amended Complaint*

The Lapensohns filed their amended complaint on March 24, 2020.  Their allegations are, for the most part, unchanged, and the Lapensohns continue to list M&T Bank Corp. as a defendant.[6]  (*See* Doc. No. 23.)  The amended complaint includes five counts.  First, in Count I, the Lapensohns argue that Defendants breached the second mortgage modification when they began invoicing principal payments in April or May 2014,[7] instead of September 1, 2015.  (*Id.* at pp. 17–20.)  In Count II, the Lapensohns argue that Defendants attempted to unjustly enrich themselves by:  (1) requesting loan modification documents despite knowing that Plaintiffs did not qualify for the forbearance programs; (2) using improper appraisals and unqualified appraisers; (3) readjusting their mortgage bill; and (4) "moving forward with a sheriff sale they were not entitled to because of false and/or inaccurate foreclosure documents certified by Defendants."  (*Id.* at p. 20 ¶ 22.)  They also allege that there were "issues with the construction loan" and that by ignoring the construction defect situation, Defendants "add[ed] to the damages incurred by Plaintiffs instead of working in good faith toward resolution."  (*Id.* at p. 20 ¶ 24.)

In Count III, the Lapensohns claim the Defendants violated the UTPCPL by "using an artificially deflated appraisal" and by adding in "substantial unearned fees and costs."  (*Id.* at p. 22 ¶ 32.)  In Count IV, the Lapensohns claim that Defendants violated §§ 1024.21 and 1024.37 of the regulations under the RESPA by (1) "representing that the Plaintiffs' loan modification

---

[6] During the pretrial conference, the Court emphasized that, per Judge Marston's publicly available Policies and Procedures, Mr. Thomas was to submit a redline with his amended complaint that showed the changes between the original complaint and any amendment.  Despite the Court's directions, when Mr. Thomas filed the Lapensohns' amended complaint, he failed to include a redline.

[7] The complaint is inconsistent about whether Defendants began invoicing higher principal payments on April 1, 2014 or May 1, 2014.  (*Compare* Doc. No. 23 at p. 19 ¶ 11 ("Hudson began invoicing principal on April 1, 2014 . . . ."), *with id.* at p. 19 ¶ 13 ("They were subsequently billed around $7,000.00 per month . . . starting in May 2014 . . . .").)  The precise date is immaterial to our conclusions.

would be given fair, due and appropriate evaluation . . . , knowing at all times that Defendants had no intention of doing so"; (2) "failing to inform the Plaintiffs and the Court that the Defendants had divested themselves of the Note and Mortgage and therefore had no authority or standing to proceed with a foreclosure Sheriff Sale, all in an attempt to unlawfully take and convert Plaintiffs' property"; and (3) improperly canceling the insurance on the home and placing force-placed insurance on the property.  (*Id.* at p. 23 ¶¶ 35, 38–39.)  Last, in Count V, the Lapensohns allege that Defendants acted negligently when they "overcharge[d]" the Lapensohns and "fail[ed] to mitigate the construction problems."  (*Id.* at pp. 24–25 ¶ 30.)

### C.  *Defendants' Motions to Dismiss*

M&T Bank and M&T Bank Corp. move to dismiss the amended complaint in its entirety. First, M&T Bank argues that the Lapensohns' claims fail under Federal Rule of Civil Procedure 12(b)(1) because they ask the Court to review and reject the state court foreclosure action in violation of the *Rooker-Feldman* doctrine.  (Doc. No. 24 at pp. 12–14.)  Second, even if the Court does have jurisdiction over the claims, the amended complaint fails under Federal Rule of Civil Procedure 12(b)(6) because the Lapensohns' claims are precluded by res judicata and fail to allege sufficient facts to state any claim for relief.  (*See generally id.*)  In its motion, M&T Bank Corp. once again argues that it is not a proper party, and even if it were, the Lapensohns' claims fail for the reasons stated in M&T Bank's motion.  (*See generally* Doc. No. 25.)  In addition, M&T Bank Corp. argues that because its attorneys have informed Mr. Thomas a myriad of times why it should not be included in this action, the Court should impose sanctions on Mr. Thomas and award M&T Bank Corp. attorney's fees related to filing its motion.  (*Id.* at pp. 15–17.)

In their response brief, the Lapensohns argue that the Court has jurisdiction because they "do not allege injuries arising from the state-court orders." (Doc. No. 28 at p. 3.) They also argue that their claims are not precluded by the foreclosure action, that they have properly stated each claim, and that M&T Bank Corp. is a proper defendant because it is subject to liability under the doctrine of *respondeat superior*. (*Id.* at pp. 8, 10–12.) Defendants filed a joint reply. (Doc. No. 29.) Having considered the parties' arguments, the Court grants Defendants' motions to dismiss and dismisses the amended complaint. The Court denies M&T Bank Corp.'s motion for sanctions.

### III.    *M&T Bank Corp.'s Motion to Dismiss*

First, we dismiss all counts against M&T Bank Corp. because the Lapensohns have not alleged any facts which suggest wrongful conduct on the part of the corporation. *See Abdellatif v. Alza Wrae Indus. Co.*, Civil Action No. 18-2297, 2019 WL 1284689, at *4 (E.D. Pa. Mar. 20, 2019) (dismissing all claims brought against one defendant "because the facts alleged in the Complaint are insufficient to support his involvement in any alleged cause of action"). Instead, they argue that M&T Bank Corp. is liable under a theory of *respondeat superior* because it is in an employee-employer relationship with M&T Bank. (Doc. No. 28 at p. 10.) But the Lapensohns have not alleged that M&T Bank Corp. is M&T Bank's employer.[8] (*See generally* Doc. No. 23.) *See Lapensohn*, 2020 WL 4704948, at *7 (refusing to consider plaintiffs' arguments because they "did not make any such allegation in the Complaint, and it is therefore not before this Court"). And even if we were to find M&T Bank Corp. vicariously liable for

---

[8] The Lapensohns focus on *respondeat superior* and explicitly disclaim any argument that we should pierce the corporate veil to find liability for M&T Bank Corp. (*See* Doc. No. 28 at p. 10 ("Defendants attempt to misrepresent the claims as 'alter-ego' claims or piercing the corporate veil. . . . This is grossly misrepresenting the claims in this case, whereas in reality, Respondeat Superior applies to this matter.").)

M&T Bank's actions, we would still dismiss all counts as against it because, as discussed below, we are dismissing all claims against M&T Bank. *See Smith v. People's Place, II, Inc.*, 819 F. App'x 131, 134 (3d Cir. 2020) ("[B]ecause all of Smith's underlying claims against Dr. Zingaro were properly dismissed, his vicarious liability claim against Dr. Zingaro's employer cannot survive dismissal.").

## IV.    *M&T Bank's Motion to Dismiss*

### A.    *Rule 12(b)(1)*

Turning to M&T Bank's motion, we begin with the argument that we lack jurisdiction under Rule 12(b)(1) before addressing the Bank's remaining arguments under Rule 12(b)(6).

#### 1.    *Standard of Review*

M&T Bank argues that most of the amended complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) because under the *Rooker-Feldman* doctrine, we lack subject matter jurisdiction to review the state court's decision in the foreclosure action.  (Doc. No. 24 at pp. 12–16.)  "Rule 12(b)(1) governs jurisdictional challenges to a complaint." *Williams v. Litton Loan Servicing*, Civil Action No. 16-5301 (ES) (JAD), 2018 WL 6600097, at *5 (D.N.J. Dec. 17, 2018).  "A Rule 12(b)(1) motion may be treated as either a facial or factual challenge to the court's subject matter jurisdiction." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).  A facial attack "contests the sufficiency of the complaint because of a defect on its face," and the Court considers only the "allegations in the complaint, along with documents referenced therein, in the light most favorable to the nonmoving party." *Williams*, 2018 WL 6600097, at *5 (quotation marks omitted).  Although Defendants do not describe their attack as facial or factual, we construe their argument as a facial attack because they present a legal dispute as opposed to a factual one. *See Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358

(3d Cir. 2014) ("A factual attack requires a factual dispute, and there is none here."); *see also Farzan v. Bayview Loan Servicing, LLC*, Civil Action No. 3:20-cv-03330-FLW, 2021 WL 613843, at *2 n.4 (D.N.J. Feb. 17, 2021) ("*Rooker-Feldman* is a facial attack on jurisdiction rather than a factual one."); *Meyers v. Caliber Home Loans, Seterus, Inc.*, No. 1:19-cv-596, 2019 WL 4393377, at *3 (M.D. Pa. Sept. 13, 2019); *cf. Williams v. Litton Loan Servicing*, Civil Action No. 16-5301 (ES) (JAD), 2018 WL 6600097, at *5 (D.N.J. Dec. 17, 2018) ("When a party moves to dismiss prior to answering the complaint, as is the case here, the motion is generally considered a facial attack, which contests the sufficiency of the complaint because of a defect on its face." (quotation marks omitted)).  "Thus, we consider whether Plaintiffs' allegations, attached documents, and referenced proceedings establish the necessary jurisdiction . . . ." *Meyers*, 2019 WL 4393377, at *3.

### 2.    *Analysis*

Defendants argue that we lack subject matter jurisdiction over Counts I through IV of the amended complaint because those counts impermissibly ask the Court to review and reject the state court's judgment in the foreclosure action.  (Doc. No. 24 at pp. 12–13.)

The *Rooker-Feldman* doctrine "provides that federal district courts lack subject matter jurisdiction to sit in direct review of state court decisions." *Spuck v. Pa. Bd. of Prob. & Parole*, 563 F. App'x 156, 159 (3d Cir. 2014); *see also Williams v. BASF Catalysts LLC*, 765 F.3d 306, 315 (3d Cir. 2014) (explaining that the doctrine "strips federal courts of jurisdiction over controversies that are essentially appeals from state-court judgments" (quotation marks omitted)).  The doctrine is based on 28 U.S.C. § 1257, which places federal appellate jurisdiction to reverse or modify a state court judgment exclusively in the United States Supreme Court. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *see also* 28 U.S.C.

§ 1257(a) ("Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court . . . ."); *D.C. Ct. App. v. Feldman*, 460 U.S. 462, 482 (1983) ("[A] United States District Court has no authority to review final judgments of a state court in judicial proceedings.  Review of such judgments may be had only in this Court."); *Malhan v. Sec'y U.S. Dep't of State*, 938 F.3d 453, 458 (3d Cir. 2019) ("A litigant seeking to appeal a state court judgment must seek review in the United States Supreme Court under 28 U.S.C. § 1257.").

The Supreme Court has emphasized that *Rooker-Feldman* is a limited doctrine, "confined to cases of the kind from which the doctrine acquired its name:  cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp.*, 544 U.S. at 284.; *see also Lance v. Dennis*, 546 U.S. 459, 464 (2006) ("[O]ur cases since *Feldman* have tended to emphasize the narrowness of the *Rooker-Feldman* rule.").  Under this narrow reading, the *Rooker-Feldman* doctrine does not bar "federal actions that simply raise claims previously litigated in state court."  *Exxon Mobil Corp.*, 544 U.S. at 287 n.2.  Instead, its application is limited to federal cases where the "loser in state court invites the federal district court to overturn a state-court judgment."  *Id.*; *see also Easley v. New Century Mortg. Corp.*, 394 F. App'x 946, 948 (3d Cir. 2010) ("The doctrine applies only when a plaintiff seeks redress for an injury caused by the state court judgment, not when a plaintiff merely seeks to relitigate a claim or issue already litigated in state court.").

The Third Circuit outlined four requirements that "must be met for the *Rooker-Feldman* doctrine to apply:  (1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court judgments; (3) those judgments were rendered before the

federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010).  Here, we have no trouble finding that the first and third factors are met.  The Lapensohns lost in the state foreclosure action when summary judgment was entered against them on April 1, 2015.  (*See* Summ. Jmt. Order.)  *See Strader v. U.S. Bank*, No. 2:19-cv-118-NR, 2020 WL 3447776, at *3 (W.D. Pa. June 24, 2020) (finding that the plaintiff "lost the mortgage-foreclosure proceeding in state court" when summary judgment was entered against him).  The trial court went on to deny Plaintiffs' petition to open summary judgment and their motion to set aside the sheriff's sale.  (*See* Order Denying Petition to Reopen; Order Denying Set Aside.)  And on June 29, 2018, the Pennsylvania Superior Court quashed and dismissed the Lapensohns' appeal of those orders.[9]  (*See* Order Dismissing Appeal.)  More than a year later, on December 3, 2019, the Lapensohns filed this case in federal court.  (Doc. No. 1.)  *See Winslow v. Stevens*, Civil Action No. 14-04550, 2015 WL 289998, at *3 (E.D. Pa. Jan. 21, 2015) (finding first and third requirements met where "the state trial court entered summary judgment against plaintiff, plaintiff lost on appeal in the Superior Court and those judgments were entered before plaintiff filed this action in federal court").

That leaves the second and fourth requirements, which the Third Circuit has described as the "key to determining whether a federal suit presents an independent, non-barred claim." *Great W. Mining & Min. Co.*, 615 F.3d at 166.  The "second requirement — that a plaintiff must

---

[9] The Lapensohns rely on the Third Circuit's opinion in *Malhan v. Secretary, U.S. Department of State* to argue that *Rooker-Feldman* does not apply.  (Doc. No. 28 at p. 2.)  *Malhan* is inapposite because the appellate court was analyzing whether an interlocutory state court order was a final "judgment" that triggered the *Rooker-Feldman* doctrine.  *Malhan*, 938 F.3d at 459–60.  By contrast, here there is no dispute that the state court's ruling on summary judgment was a final order to which *Rooker-Feldman* may apply.  *Cf. id.* (explaining that there is a "*Rooker-Feldman* 'judgment' when the "lower state court issues a judgment and the losing party allows the time for appeal to expire").

be complaining of injuries caused by a state-court judgment — may [ ] be thought of as an inquiry into the source of the plaintiff's injury." *Id.* When the "source of the injury is the defendant's actions (and not the state court judgments)," the *Rooker-Feldman* doctrine does not apply. *Id.* at 167. "The critical task is thus to identify those federal suits that profess to complain of injury by a third party, but actually complain of injury produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." *Id.* (quotation marks omitted). "A useful guidepost is the timing of the injury, that is, whether the injury complained of in federal court existed prior to the state-court proceedings and thus could not have been 'caused by' those proceedings." *Id.*

Under the fourth requirement, we must ask "whether the plaintiff's claims will require appellate review of state-court decisions by the district court." *Id.* at 169. The district court is prohibited from reviewing the state court's ruling to determine "whether it reached its result in accordance with the law." *Id.* To determine whether the second and fourth requirements are satisfied, the court goes claim by claim, analyzing each injury alleged by the plaintiff. *See Williams*, 2018 WL 6600097, at *7.

Here, M&T Bank argues that Counts I through IV impermissibly ask this Court to review and reject the state-court foreclosure action. The assertions underlying Counts I through IV frequently overlap, and for the most part, the Lapensohns' allegations target M&T Bank's actions prior to obtaining foreclosure — overcharging, requesting documents multiple times, conducting inadequate appraisals, failing to confer in good faith, and cancelling insurance. And although these issues are closely related to the foreclosure action, they do not ask us to review and reject that judgment in a way that would trigger *Rooker-Feldman*. *See Great W. Mining & Min. Co.*, 615 F.3d at 167 ("When the source of the injury is the defendant's actions (not the

state-court judgments), the federal suit is independent, even if it asks the federal court to deny a legal conclusion reached by the state court."); *Easley*, 394 F. App'x at 948 (holding that *Rooker-Feldman* did not bar claims "based on allegations of fraud, deception and other wrongs which pre-dated the foreclosure action"); *Turner*, 449 F.3d at 547 (holding that the district court erred by applying *Rooker-Feldman* when the "complaint raised federal claims, grounded on the [Fair Housing Act], *not* caused by the state-court judgment but instead attributable to defendants' alleged FHA violations that preceded the state-court judgment"); *Williams*, 2018 WL 6600097, at *7 (finding that the plaintiff's injury was caused by the defendants' actions and not the state foreclosure case where the plaintiff claimed that the defendants wrongly solicited, offered, and entered into a mortgage modification agreement with no intention to honor it).

However, there are two claims that do impermissibly allege injuries arising out of the state court's judgment.  First, in Count II, the Lapensohns allege that M&T Bank was unjustly enriched when it "mov[ed] forward with a sheriff sale [it was] not entitled to because of false and/or inaccurate foreclosure documents certified by Defendants."  (*Id.* at p. 20 ¶ 22.)  Although framed in terms of M&T Bank's improper conduct, closer inspection shows that the Lapensohns' alleged injury — the sale of their home — was really caused by the state court judgment, which authorized the sheriff's sale and denied the Lapensohns' motion to set it aside.  And we would have to review that judgment, including the documents submitted by M&T Bank in support of foreclosure, to rule in the Lapensohns' favor here.  *See Laychock v. Wells Fargo Home Mortg*, 399 F. App'x 716, 718 (3d Cir. 2010) ("Any claim relying on allegations of wrongful foreclosure must be rejected under the *Rooker Feldman* doctrine.").

Second, in Count IV, the Lapensohns claim that M&T Bank committed fraud in violation of the regulations under the RESPA by "failing to inform the Plaintiffs and the Court that the

Defendants had divested themselves of the Note and Mortgage and therefore had no authority or standing to proceed with a foreclosure Sheriff Sale, all in an attempt to unlawfully take and convert Plaintiffs' property."  (Doc. No. 23 at p. 23 ¶¶ 35, 38–39.)  Once again, the Lapensohns' alleged injury — the "unlawful[ ] tak[ing] and convert[ing] of Plaintiffs' property" — is an injury caused by the state court's ruling authorizing foreclosure on their home.  And they ask us to review and reject that ruling on the basis that M&T Bank lacked standing in the state court action.[10]  *See Meyers*, 2019 WL 4393377, at *8 (holding that a nearly-identical allegation "constitutes a direct attack on the state judgment and invites this Court to review the standing of the Defendants in the state action, which *Rooker-Feldman* precludes"); *see also Campbell*, 2017 WL 3142118, at *2–3 (finding that the "heart of [the plaintiff's] complaint is an attempt to obtain review of the state court foreclosure action" where the plaintiff challenged the defendant's standing in the foreclosure action).

For those reasons, we find that we lack jurisdiction over the Lapensohns' claim in Count II that M&T Bank wrongfully pursued a sheriff's sale, and their claim in Count IV that M&T Bank lacked standing to pursue foreclosure.  Those claims are dismissed with prejudice.

### B.    *Rule 12(b)(6)*

We turn now to Defendants' contention that the amended complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Zuber v.*

---

[10] In the alternative, we find this claim is precluded under the doctrine of res judicata. *See Moncrief v. Chase Manhattan Mortg. Corp.*, 275 F. App'x 149, 154 (3d Cir. 2008) ("Moncrief's claim that Citibank did not have standing to bring the foreclosure action is also precluded because she could have raised this issue as a defense to, or 'new matter' in, the foreclosure action.").

*Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (quotation marks omitted).  In reviewing a motion to dismiss, the court must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn from those allegations.  *Id.*  However, the court is not "compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation."  *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017) (quotation marks omitted).  And "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"In deciding a Rule 12(b)(6) motion, a court considers only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputably authentic documents if the complainant's claims are based upon these documents."  *Hartig Drug Co. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016); *see also In re Adolor Corp. Sec. Litig.*, 616 F. Supp. 2d at 571 (explaining that on review of a Rule 12(b)(6) motion to dismiss, the court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine . . . , in particular documents incorporated into the complaint by reference and matters of which a court may take judicial notice" (quotation marks omitted)).

With this standard in mind, we find that dismissal is warranted on the Lapensohns' remaining claims because they are either precluded or fail to state a claim upon which relief can be granted.

### 1.    *Preclusion*

First, M&T Bank argues that even if the *Rooker-Feldman* doctrine does not strip the Court of jurisdiction, the amended complaint should be dismissed because the Lapensohns' claims are precluded under the doctrine of res judicata.  "[T]he *Rooker-Feldman* inquiry is distinct from the question of whether claim preclusion (res judicata) or issue preclusion

(collateral estoppel) defeats the federal suit." *Great W. Mining & Min. Co.*, 615 F.3d at 170; *see also Exxon Mobil Corp.*, 544 U.S. at 282 ("If a federal plaintiff presents an independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which [the plaintiff] was a party, then there is jurisdiction [under the *Rooker-Feldman* doctrine], and state law determines whether the defendant prevails under principles of preclusion." (quotation marks omitted and alterations adopted)); *Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 548 (3d Cir. 2006) ("[T]he Supreme Court in *Exxon Mobil* explained that the continuing vitality of a federal action filed after entry of state-court judgment often depends on state preclusion law.").

"Res judicata, also known as claim preclusion, bars 'repetitious suits involving the same cause of action once a court of competent jurisdiction has entered a final judgment on the merits.'" *Williams*, 2018 WL 6600097, at *8 (quoting *United States v. Tohono O'Odham Nation*, 563 U.S. 307, 315 (2011)). "The preclusive effect of a state-court judgment in a subsequent federal action depends on the law of the state that adjudicated the original action." *Id.* at *9. Here, the underlying foreclosure action was adjudicated in Pennsylvania, so Pennsylvania preclusion law applies.

> In Pennsylvania, res judicata:
>
> bars a later action on all or part of the claim which was the subject of the first action. Any final, valid judgment on the merits by a court of competent jurisdiction precludes any future suit between the parties or their privies on the same cause of action. *Res judicata applies not only to claims actually litigated, but also to claims which could have been litigated during the first proceeding if they were part of the same cause of action.*

*Turner*, 449 F.3d at 548 (quoting *Balent v. City of Wilkes-Barre*, 669 A.2d 309, 313 (Pa. 1995)). "For the doctrine of res judicata to apply, a concurrence of four conditions must be shown: (1) identity in the things sued upon or for; (2) identity of the cause of action; (3) identity of

persons and parties to the action; and (4) identity of the quality or capacity of the parties suing or being sued." *Del Turco v. Peoples Home Sav. Ass'n*, 478 A.2d 456, 461 (Pa. Super. Ct. 1984).

The third and fourth identities are satisfied here. The Lapensohns were parties in the foreclosure action, and as the successor-by-merger to Hudson City, M&T Bank is in privity with Hudson City and may rely on the earlier judgment. *See ARCO Polymers, Inc. v. Studiengesellschaft Kohle mbH*, 555 F. Supp. 547, 551 (E.D. Pa. 1982) ("[W]e hold that upon the undisputed facts of record, API succeeded in interest to the subject matter of the judgment in *Ziegler v. Phillips Petroleum Company, supra*, that API is in privity with Phillips and is therefore bound by the earlier judgment."); *Stolarick v. Keycorp*, Civil Action No. 17-0593, 2017 WL 4642312, at *3 (E.D. Pa. Oct. 17, 2017) (finding the previous action and current action "involved the same parties or their privities" because "Defendant KeyBank is the successor by merger to First Niagara," the defendant in the first action). There is also no dispute that the parties are participating in the same capacity in this action as in the state court action. *See Easley*, 394 F. App'x at 948 (finding that the parties' capacities to sue and be sued were the same where the plaintiff was the defendant in the initial foreclosure action and the defendant was the plaintiff in the initial foreclosure action).

Next, we find an identity in the things being sued upon or for between this action and the foreclosure case. The subject of both actions is the mortgage, including its terms, whether the Lapensohns were in default, the amount owed, and the propriety of proceeding to foreclosure on the property covered by the mortgage. *See Easley*, 394 F. App'x at 948 (The plaintiff's "claim is based on allegations related to her mortgage, including events leading up to its execution, and events leading up to and including the foreclosure. The 'thing sued upon' is therefore the same . . . ."); *Brown v. Bank of Am.*, No. 1858 WDA 2013, 2014 WL 10919554, at *6 (Pa. Super.

Ct. June 20, 2014) ("The thing being sued upon is the right to foreclose upon Plaintiff's property pursuant to a valid mortgage because of Plaintiff's default, identical matters being sued upon in both cases.").

That leaves the second condition:  identity of the cause of action.  In analyzing whether this identity is satisfied, we are mindful that "there is no single definition of 'cause of action' for purposes of claim preclusion."  *Davis v. Wells Fargo*, 824 F.3d 333, 342 (3d Cir. 2016).  Instead, the Court focuses on the "facts rather than the legal theories," understanding that "res judicata generally is thought to turn on the essential similarity of the underlying events giving rise to the various legal claims."  *Id.* (quotation marks omitted).  In evaluating whether res judicata applies, "we do not proceed mechanically, but focus on the central purpose of the doctrine, to require a plaintiff to present all claims arising out of the same occurrence in a single suit."  *Id.* at 341 (quotation marks omitted); *see also Brown*, 2014 WL 10919554, at *5 ("The essential inquiry is whether the ultimate and controlling issues have been decided in a prior proceeding in which the present parties had an opportunity to appear and assert their rights.").  The doctrine applies equally to plaintiffs and defendants in the first suit, barring "consideration in a second suit" of counterclaims and "defenses that the party might have, but did not raise."  *Laychock*, 399 F. App'x at 719 (quotation marks omitted); *see also Riverside Mem. Mausoleum, Inc. v. UMET Trust*, 581 F.2d 62, 67 (3d Cir. 1978) (same).

Here, we find that the Lapensohns' claims about incorrect billing (contained in Counts I and II), their claims about M&T Bank's bad faith conduct (contained in Counts II and IV), and their claims about unreasonable appraisals (contained in Counts II and III) are based on the same cause of action as that in the foreclosure case.

### a.      *Claims About Incorrect Billing*

In Counts I and II, the Lapensohns allege that M&T Bank breached the second mortgage modification and was unjustly enriched when it began overcharging them in the spring of 2014. (Doc. No. 23 at pp. 17–20; *see also id.* at p. 20 ¶ 22).  But the state court addressed the validity of the increased invoices when it found the Lapensohns in default and entered summary judgment in favor of M&T Bank.  "Pennsylvania law requires a foreclosure complaint to include: (1) a specific averment of default, (2) an itemized statement of the amount due, and (3) a demand for judgment of the amount due."  *Moncrief*, 275 F. App'x at 153.  M&T Bank's complaint alleged that the Lapensohns first went into default when they failed to make increased mortgage payments beginning June 1, 2014.  (*See* Motion for Summ. Jmt. at p. 7.)  And the state court ruled on this issue when it entered judgment in M&T Bank's favor.

Because the Lapensohns could have argued before the state court that they were not in default because the invoices were contrary to the parties' second mortgage modification, they are precluded from raising that claim here.  *See Easley*, 394 F. App'x at 949 ("The CPL claim before us is intimately tied to the creation of the mortgage and subsequent foreclosure . . . and, thus, [the plaintiff] could have brought it as a counterclaim in the foreclosure proceeding.  Therefore, the CPL claim is barred by virtue of res judicata."); *Lewis v. Citibank, N.A.*, 179 F. Supp. 3d 458, 462 (E.D. Pa. 2016) ("All of plaintiffs' remaining claims — fraud in the concealment, fraud in the inducement, violation of RESPA, fraudulent misrepresentation, violation of HOEPA, negligent infliction of emotional distress, negligence, and 'dual tracking,' could have been litigated in the State Court Action as they relate to the defendants' conduct with regard to plaintiffs' mortgage.").

### b.    *Claims About Bad Faith Negotiations*

Similarly, in Counts II and IV, the Lapensohns claim that M&T Bank acted in bad faith during negotiations following the Lapensohns' default.  Specifically, the Lapensohns argue that M&T Bank requested loan modification documents despite knowing that the Lapensohns would not qualify for the programs, ignored the construction defect situation, and falsely represented that "Plaintiffs' loan modification would be given fair, due and appropriate evaluation" despite "knowing at all times that Defendants had no intention of doing so."  (Doc. No. 23 at p. 20 ¶ 22; *id.* at p. 21 ¶¶ 24–26; *id.* at p. 23 ¶ 35.)  The Lapensohns' allegations of bad faith target the appropriateness of M&T Bank's actions in pursuing foreclosure.  These claims not only could have been, but were, raised by the Lapensohns during the state court case.  Specifically, in their petition to postpone the sheriff's sale and their motion to set aside the sheriff's sale, the Lapensohns argued that M&T Bank failed to negotiate in good faith about the loan dispute:

- "Since letter of December 9, 2016, Bank Officers requested information which was provided and subsequently requested the same information again and again but have not offered a meeting or discussion to resolve the loan dispute despite meeting/conversation being requested of them multiple times." (*Hudson City Sav. Bank v. Lapensohn*, Case No. 2014-27824, Doc. No. 93 at p. 7 ¶ 5.)

- "Again, the bank was acting in Bad Faith and directly and intentionally hindering any and all efforts to try to resolve this situation in a reasonable way." (Motion to Set Aside at p. 7 ¶ 4.)

- "There are many more calls/emails/faxes/letters than those referenced with the Bank, banks attorney and banks consumer assistance center which paint a continuous stream of Lapensohns [sic] efforts to amicably resolve a horrific unpredictable unique situation and a bank who has done everything possible to work against and further harm the consumer, let alone work toward a resolution knowing that no one can ever win from this mess." (*Id.* at p. 8 ¶ 5.)[11]

---

[11] The state court record also suggests that these arguments were presented at oral argument on the Lapensohns' petition for injunction and emergency petition to stay the sheriff's sale, both of which were denied. (*See Hudson City Sav. Bank v. Lapensohn*, Case No. 2014-27824, Doc. No. 110 at p. 4.)

The state court ultimately rejected the Lapensohns' argument when it denied their motion to set aside the sale.  Because the Lapensohns litigated their bad faith claim in the state foreclosure action, they are precluded from raising it here.  *See Rearick v. Elderton State Bank*, 97 A.3d 374, 386 (Pa. Super. Ct. 2014) (concluding that the plaintiff could not seek damages for the mortgage company's "commercially unreasonable method of liquidating the properties surrendered by [the plaintiff] in foreclosure" because "that claim was litigated and disposed of in the prior action"); *see also Glanton v. Master Craftsman Assocs.*, Civil Action No. 11-5202 (PGS), 2012 WL 3229161, at *5 (D.N.J. Aug. 6, 2012) (applying Pennsylvania law and finding that "[r]es judicata applies here to bar Glanton's remaining claims for gross negligence and wrongful foreclosure/breach of contract since these claims were already raised and adjudicated in the state foreclosure action").

### c.     *Claims About Inaccurate Appraisals*

Finally, in Counts II and III, the Lapensohns argue that M&T Bank used improper appraisals to assess unearned fees and costs and in pursuit of their bad faith negotiation tactics. Specifically, in Count II, the Lapensohns allege that Defendants "attempted to unjustly enrich themselves" by "sending an appraiser with no experience in construction defect appraisals to Plaintiffs['] property [and] using an improper appraisal."  (Doc. No. 23 at p. 20 ¶ 22.)  The Lapensohns fail to identify with the requisite specificity how M&T Bank was enriched by the allegedly inaccurate appraisal, stating only that M&T Bank "add[ed] to the damages incurred by Plaintiffs instead of working in good faith toward resolution."  (*Id.* at p. 21 ¶¶ 23–25.)  Similarly, in Count III, the Lapensohns state without explanation that "[b]y using an artificially deflated appraisal" M&T Bank "add[ed] in substantial unearned fees and costs" and therefore acted in an unfair or deceptive manner.  (Doc. No. 23 at p. 22 ¶ 32.)  Because the Lapensohns do not specify

which of the appraisals they are challenging or explain how M&T Bank used the appraisal(s) to retain "unearned fees and costs" or to engage in bad faith tactics, the res judicata analysis is more difficult as to these claims.

However, we find that under any interpretation, the Lapensohns are raising claims that either could have been or were decided in the foreclosure action. As we see it, there are two possible interpretations of the claims in the amended complaint.[12] First, the Lapensohns argue that M&T Bank used the appraisals as another bad faith negotiation tactic. As discussed above, that claim was previously litigated and rejected by the state court. Second, the Lapensohns claim that M&T Bank used the allegedly inaccurate appraisals to increase attorney's fees and litigation costs during the foreclosure action. Those claims could have been raised before the state court, as a defense to M&T Bank's request for attorney's fees and costs. *See In re Sheed*, 607 B.R. 470, 485–86 (Bankr. E.D. Pa. 2019) ("The Debtor['s] claims that U.S. Bank did not comply with Act 6 and FHA servicing guidelines, rendering all attorneys' fees and costs in the 2007 Foreclosure Action, the 2009 Bankruptcy Case, and the 2016 Foreclosure Action improper, are barred by res judicata because they could have been pressed in the State Court."). Therefore, under either interpretation, the Lapensohns' claims based on improper appraisals are barred by res judicata.

***

---

[12] Plaintiffs' response confirms the Court's interpretation:

> [T]he complaint goes through a substantial amount of information about the appraisals and how they were artificially deflated in bad faith which added substantial unearned fees and costs, and made any serious good faith negotiations to resolve the ongoing mortgage dispute impossible. If one side fails to operate in good faith to the severe detriment of the other side, the party acting in bad faith should not be rewarded. Instead, that is exactly what we have, with the unjust enrichment of these parties for those fees and costs, as well as their ability to proceed unhindered with the cases, since no negotiations could be had.

(Doc. No. 28 at p. 8.)

In sum, we find that the Lapensohns are precluded from asserting claims that M&T Bank (1) overcharged the Lapensohns by invoicing principal in addition to interest beginning in spring 2014; (2) acted in bad faith during negotiations by ignoring the construction defect situation, encouraging the Lapensohns to apply for loan modification programs for which they did not qualify, and requesting documents related to those applications; and (3) acted in bad faith and increased fees and costs by using improper appraisals.  Counts I,[13] II, and III are dismissed with prejudice in their entirety.  Count IV is dismissed with prejudice to the extent it brings a claim for bad faith.

### 2.      *Failure to State a Claim*

Once the claims barred by the *Rooker-Feldman* doctrine and res judicata are removed, only two claims remain.  First, in Count IV, the Lapensohns allege that M&T Bank violated § 1024.37(b) of the regulations under the RESPA when they "improperly canceled the current insurance in order to put Force Placed Insurance on the property."  (Doc. No. 23 at p. 23 ¶ 39.) Second, under Count V, the Lapensohns allege that M&T Bank acted negligently when it overcharged them and failed to mitigate the construction defect situation.  (*Id.* at pp. 24–25.)

### a.      *Count IV:  The RESPA*

In the remaining portion of Count IV, the Lapensohns claim that M&T Bank violated § 1024.37(b) when it "improperly canceled the current insurance in order to put Force Placed Insurance on the property."  (*Id.* at p. 23 ¶¶ 38–39.)  Section 1024.37(b) prohibits a servicer from assessing "on a borrower a premium charge or fee related to force-placed insurance unless the

---

[13] In the alternative, we find that Count I is barred by the four-year statute of limitations governing contract actions.  42 Pa. Stat. & Const. Stat. § 5525(a).  The Lapensohns allege that M&T Bank breached the second mortgage modification by invoicing principal payments in spring 2014, which means the Lapensohns had, at the latest, until May 2018 to bring their breach of contract claim.  (Doc. No. 23 at p. 19 ¶¶ 10–11.)  However, they did not file their complaint in this case until October 3, 2019. (Doc. No. 1.)

servicer has a reasonable basis to believe that the borrower has failed to comply with the mortgage loan contract's requirement to maintain hazard insurance." 12 C.F.R. § 1024.37(b). M&T Bank argues that the Lapensohns' conclusory allegations fail to state a claim because they have not alleged that they were charged for the force-placed insurance or otherwise sustained any damages because of the force-placed insurance. We agree. Not only do the Lapensohns fail to allege that they were charged for the insurance, but they claim that they only "recently discovered . . . that the insurance that was on the property was permitted to expire," suggesting they were not asked to pay for the new insurance or otherwise harmed by it. (*See* Doc. No. 23 at p. 12 ¶ 92.) Therefore, the remainder of Count IV is dismissed with prejudice.[14]

### b.    *Count V: Negligence*

Last, in Count V, the Lapensohns allege that M&T Bank acted negligently when it "overcharge[d]" them and "fail[ed] to mitigate the construction problems." (Doc. No. 23 at p. 24–25 ¶ 30.) M&T Bank argues that the Lapensohns have failed to state a plausible claim for negligence and that any claims are barred by the two-year statute of limitations.[15]

---

[14] The Lapensohns have not sought leave to amend and because this is not a civil rights complaint, the Court is not compelled to *sua sponte* allow an amendment. *See Corsale v. Sperian Energy Corp.*, 819 F. App'x 127, 131 (3d Cir. 2020) ("The plaintiffs did not properly request leave to amend here, and so the District Court did not abuse its discretion in not granting leave to amend sua sponte."); *N.E. Revenue Servs., LLC v. Maps Indeed, Inc.*, 685 F. App'x 96, 102–03 (3d Cir. 2017) ("Because this is not a civil rights case, the District Court was not required to *sua sponte* offer amendment."); *see also Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252–53 (3d Cir. 2007) ("We have rarely applied the *sua sponte* amendment rule outside the context of a civil rights case, and we will not do so here. . . . Fletcher-Harlee did not ask the District Court for leave to amend its complaint, and so it can hardly fault the Court for not granting relief it never requested."); *Lapensohn*, 2020 WL 4704948, at *5 n.10 ("[I]n civil cases, other than civil rights cases, courts need not provide plaintiffs the opportunity for *sua sponte* amendment after a motion to dismiss.").

[15] M&T Bank also argues that the negligence claims fail under the economic loss doctrine. Although we do not reach this argument, we note that the doctrine "originated in the context of product liability tort claims where the product malfunctions, and ca[u]ses damages to only the product." *Md. Cas. Co. v. Preferred Fire Prot., Inc.*, No. 2:14cv245, 2014 WL 4218715, at *4 (W.D. Pa. Aug. 25, 2014). "As a result, although both the economic loss doctrine and the gist of the action doctrine are applicable to tort actions that inappropriately stem from contract liability, the gist of the action doctrine is a better fit for non-products liability cases, and the economic loss doctrine is reserved for those cases involving

"To succeed on a negligence claim under Pennsylvania law, a plaintiff must prove four elements: (1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the defendant's breach of duty and the plaintiff's injury; and (4) actual damages." *Fekete v. Nat'l R.R. Passenger Corp.*, Civil Action No. 11-6570, 2011 WL 5572626, at *2 (E.D. Pa. Nov. 16, 2011); *see also Cummins v. Firestone Tire & Rubber Co.*, 495 A.2d 963, 967 (Pa. Super. Ct. 1985) (same); *Althaus ex rel. Althaus v. Cohen*, 756 A.2d 1166, 1168 (Pa. 2000) ("The primary element in any negligence cause of action is that the defendant owes a duty of care to the plaintiff."). Here, the Lapensohns state in conclusory fashion that "Defendants failed to conform to the required standard of conduct owed to Plaintiffs," that they "suffered substantial damages," and that the "conduct of Defendants was a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, damages, and harm to Plaintiffs." (Doc. No. 23 at pp. 24–25.) The Court cannot consider these conclusory legal assertions in deciding whether the amended complaint states a plausible claim for negligence. *See Ashcroft*, 556 U.S. at 678 (explaining that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"); *Fekete*, 2011 WL 5572626, at *2 ("The Court will not credit such conclusory statements" — i.e., "that the accident was due to the negligence of [the defendant]" — "in deciding a motion to dismiss.")

Once those legal conclusions are stripped away, the only allegations remaining in support of the negligence claims are the Lapensohns' vague references to the rest of the amended complaint and the allegation that M&T Bank failed "to mitigate the construction problems, as

---

products liability." *Id.* (cleaned up); *see also Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 104 n.11 (3d Cir. 2001) ("The application of the economic-loss doctrine to the instant case does not quite fit because that doctrine developed in the context of courts' precluding products liability tort claims in cases where one party contracts for a product from another party and the product malfunctions, injuring only the product itself. The 'gist-of-the-action' test is a better fit for this non-products liability case." (internal citations omitted)).

well as the overcharges and subsequent issues previously raised." (Doc. No. 23 at pp. 24–25 ¶ 30.) Because the Lapensohns have not adequately pled that M&T Bank owed them a duty of care, the nature of that duty, how M&T Bank's actions caused their injuries, or the nature of those injuries, their negligence claims fail. *See Fekete*, 2011 WL 5572626, at *2 (granting motion to dismiss because the plaintiff "failed to adequately plead the second and third elements required for a negligence claim[ ]" and "use[d] only conclusory statements").

In the alternative, we find that the Lapensohns' negligence claim based on M&T Bank's failure "to mitigate the construction problems" is barred by the statute of limitations. In Pennsylvania, a plaintiff has two years to bring an action for negligence. 42 Pa. Stat. & Cons. Stat. § 5524. As mentioned above, it is far from clear what the Lapensohns mean by "failure to mitigate the construction problems." However, the Lapensohns have not alleged that M&T Bank took *any action* related to the construction defect situation on or after October 3, 2017 (two years before they filed the complaint).[16] Therefore, under any interpretation, the statute of limitations has run on this claim.

For those reasons, Count V is dismissed with prejudice.[17]

---

[16] Even the most liberal reading of the amended complaint shows that M&T Bank's last act tangentially related to the construction situation occurred in September 2017. In the spring of 2009, the Lapensohns learned the home had construction defects; by February 2012, they knew the property was structurally deficient; and in 2014, they learned that repairs would cost more than $1.4 million. (Doc. No. 23 at p. 4 ¶ 9; *id.* at p. 6 ¶ 31.) When the Lapensohns were unable to make mortgage payments in 2014, M&T Bank refused to discuss the "global situation" affecting the home and rejected the Lapensohns' request for a forbearance agreement to account for the construction costs. (*Id.* at p. 5 ¶¶ 28–29; *id.* at p. 6 ¶¶ 32, 35.) Over the next few years, the Lapensohns continued to request meetings with the Bank and apply for forbearance, but all discussions ceased in September 2017, when M&T Bank became unresponsive. (*Id.* at p. 11 ¶ 79.)

[17] As discussed above, the Court is not compelled to *sua sponte* grant leave to amend. *See supra* n.14.

## V.       *Conclusion*

In conclusion, Defendants' motions to dismiss are granted, and the amended complaint is

dismissed with prejudice.   M&T Bank Corp.'s request for attorney's fees is denied.[18]

An appropriate order follows.

---

[18] The Court appreciates M&T Bank Corp.'s understandable frustration with Plaintiff's counsel. And we acknowledge that multiple judges in this and other Districts have sanctioned Mr. Thomas for similar conduct.  However, in this case, we cannot say that his actions are the result of willful bad faith, as opposed to ignorance.  For that reason, although Mr. Thomas's efforts have been far from laudable, we decline to sanction him at this time.  Mr. Thomas is, however, warned that ignorance will not provide a defense in the future.  *See Kuhns v. CoresStates Fin. Corp.*, 998 F. Supp. 573, 577 (E.D. Pa. 1998) (deferring the imposition of sanctions but "strongly caution[ing] plaintiff and her attorney against the institution of any future lawsuits or motions by which she tries to again resurrect the claims and contentions asserted both in this action and in the preceding one.  While we do not doubt the sincerity of plaintiff's belief that her claims were viable and were not previously litigated, we remind her and her counsel that mistaken judgment, ignorance of the law, or personal belief with regard to what the law should be do not excuse and will not provide a defense to a subsequent sanctions motions").